FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

12 JUL 26 PM 2:50

MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

UNITED STATES OF AMERICA
ex rel. HAROLD MILSTEIN, M.D.,

Plaintiffs

v.

FAMILY DERMATOLOGY, P.C.,
PAULA NELSON, M.D.,
ADEYINKA ADISOKAN and
ANDREW FRANKEL

Defendants.

Case No.: 8:12-CV-1671-T-27TBM

FILED UNDER SEAL
PURSUANT TO 31 U.S.C
§ 3730(b)(2) DO NOT PLACE
IN PRESS BOX OR ENTER
ON PACER

## FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1.  Relator Harold Milstein, M.D. ("Relator") brings this action on behalf of the United States of America against Defendants Family Dermatology, P.C., Paula Nelson, M.D., Adeyinka Adisokan and Andrew Frankel for treble damages and civil penalties for the Defendant's violations of the False Claims Act, 31 U.S.C. §3729 *et seq.*

2.  As required by the False Claims Act, 31 U.S.C. §3730(b)(2), Relator has provided previously to the Attorney General of the United States and to the United States Attorney for the Middle District of Florida a statement of all material evidence and information related to the complaint. This disclosure statement is supported by material evidence known to Relator establishing the existence of Defendants' false claims. Because the disclosure statement includes attorney-client communications and work product of Relator's attorneys, and is submitted to the



Attorney General and to the United States Attorney in their capacity as potential co-counsel in this litigation, Relator understands this disclosure to be confidential.

## JURISDICTION AND VENUE

3. This action arises under the False Claims Act, 31 U.S.C. §3729 *et seq*. This Court has jurisdiction over this case pursuant to 31 U.S.C. §3732(a) and § 3730(b), as well as 28 U.S.C. §1345 and §1331.

4. Venue is proper in this district pursuant to 31 U.S.C. §3732(a), because some of the acts proscribed by 31 U.S.C. §3729 *et seq*. and complained of herein took place in this district, and is also proper pursuant to 28 U.S.C. §1391(b) and (c) because at all relevant times Defendants transacted business in this district.

## PARTIES

5. Dr. Harold Milstein is a board certified dermatologist. Dr. Milstein operated his own dermatology practice at four locations in the Philadelphia area for approximately 30 years before he sold his practice to Family Dermatology in 2006 and became an independent contractor for Family Dermatology. He is still an independent contractor for Family Dermatology. His offices are located at 525 Jamestown Avenue, Philadelphia, PA 19128; 2705 DeKalb Pike, Norristown, PA 19041; 301 East City Avenue, Bala-Cynwyd, PA 19004; and 130 Airport Road, Hazelton, PA 18202. Approximately 30 percent of Dr. Milstein's patients are Medicare beneficiaries.

6. Family Dermatology is a multi-state dermatology practice headquartered outside Atlanta at 629 Beaver Run Road, Lilburn, Georgia 30047 believed to be owned and controlled by Dr. Paula Nelson. A listing of Family Dermatology's offices obtained from its web site is contained in **Exhibit 1**. Family Dermatology has organized itself under various names in

2

various states, including Family Dermatology, PC; Family Dermatology Management, Inc.; Family Dermatology of Pennsylvania, PC; Family Dermatology Management of Pennsylvania, Inc.; Family Dermatology of Nebraska, LLC; Family Dermatology Staffing of Pennsylvania, Inc.; and Family Dermatology, PL. A summary is contained in **Exhibit 2**.[1]  Family Dermatology has two offices in the Middle District of Florida, in Clearwater and in Palm Harbor. **Exhibit 3**.

7. Nelson Dermatopathology & Pathology is a dermatopathology lab located at 755 Mt. Vernon Highway, Suite 250, Atlanta, Georgia 30328. Two sample Nelson Dermatopathology reports are attached as **Exhibit 4**. Adeyinka Adisokan told Dr. Milstein that Dr. Paula Nelson owns Nelson Dermatopathology.

8. The dermatopathologists at Nelson Dermatopathology are listed on Family Dermatology's website as Family Dermatology providers. **Exhibit 5**. Family Dermatology bills Medicare and other insurers for professional biopsy slide interpretations performed by dermatopathologists at Nelson Dermatopathology. **Composite Exhibit 6**.

9. Dr. Paula Nelson is a board certified dermatologist and dermatopathologist in the Atlanta area who controls both Family Dermatology and Nelson Dermatopathology & Pathology. She is the medical director of Nelson Dermatopathology.

10. Adeyinka Adisokan is the husband of Dr. Paula Nelson. He is an officer of most Family Dermatology affiliate entities.

---

[1] The tax identification number used for the offices in Florida, Pennsylvania, Massachusetts and Maryland is 20-5288226. The tax ID number used for the offices in Georgia, North Carolina and South Carolina is 58-2273925. The tax ID number used for the office in New Jersey is 27-3428241. The tax ID number used for the office in Nebraska is 45-2697375.

11. Andrew Frankel was effectively in charge of Family Dermatology's operations outside of Georgia, while Adeyinka Adisokan oversaw Family Dermatology's operations in Georgia. Both functioned under Dr. Paula Nelson.

12. Harold Milstein is an "original source" within the meaning of 31 U.S.C. §3730(e)(4)(B), but states that to his knowledge the information contained herein concerning Defendants' False Claims Act violation has not been publicly disclosed.

## MEDICARE PROGRAM POLICIES

13. Under the Stark statute, a physician who has a financial relationship with an entity may not refer patients to that entity for the furnishing of designated health services. 42 U.S.C. §1395nn(a)(1)(A). "Designated health services" includes clinical laboratory services such as dermatopathology. 42 CFR §411.351. Section §1395nn(a)(2) defines "financial relationship" as including both a compensation arrangement and an investment arrangement between the physician and the entity. Such a compensation arrangement includes "any arrangement involving any remuneration between a physician …. and an entity." 42 U.S.C. §1395nn(h)(1)(A). "Remuneration" in turn is defined as "any remuneration, directly or indirectly, overtly or covertly, in cash or in kind." 42 U.S.C. §1395nn(h)(1)(B).

14. The Stark statute also prohibits referrals from a physician to an entity for designated health services when the physician and the entity have a financial relationship. Referrals are defined as "the request by another physician for the item or service, including the request by a physician …. (and any test or procedure ordered by, or to be performed by or under the supervision of) that other physician." 42 U.S.C. §1395nn(h)(5)(A).

15. "Any 'request by a physician for an item or service' qualifies as a referral" under the Stark statute. *United States ex rel. Kosenske v. Carlisle HMA, Inc.*, 2007 WL 3490537, *7

(M.D. Pa. 2007). Referral of patients for diagnostic tests is included within the Stark prohibition against specified referrals. *United States ex rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88, 98 (3rd Cir. 2009) (referrals by physicians at pain clinic to for patients to have diagnostic tests performed at hospital "comes within the statutory definition of referrals" under the Stark statute).

16. "The Stark statute prohibits the presentation of a claim to Medicare for a designated health service by an entity where the service was furnished pursuant to a prohibited referral by a physician that has a financial relationship with the entity." *United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 239 n.6 (3rd Cir. 2004), *citing* 42 U.S.C. §1395nn(a). Similarly, 42 U.S.C. §1395nn(g)(1) explicitly prohibits the Medicare program from paying claims submitted in violation of the Stark statute. Under Eleventh Circuit precedent, this makes claims knowingly submitted in violation of the Stark statute false or fraudulent claims under the False Claims Act. *McNutt ex rel. United States v. Haleyville Medical Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005)("When a violator of government regulations … persists in presenting claims for payment that the violator knows the government does not owe, that violator is liable, under the [False Claims] Act, for its submissions of those false claims"; "The violation of the regulations and the corresponding submission of claims for which payment is known by the claimant not to be owed makes the claims false under sections § 3729(a)(1) and (3)").

17. Medicare policies require that services provided by mid-level providers such as physician assistants and nurse practitioners may be billed at 100 percent of the physician fee schedule rate only if those services were provided incident to a physician's services while under the physician's direct supervision. This means that the supervising physician and the mid-level provider must be working in the same office suite at the time the mid-level provider's services

were performed. Otherwise, federal regulations limit Medicare reimbursement for services provided by physician assistants and nurse practitioners to 85 percent of the physician fee schedule amount for the service. 42 CFR § 414.52 (physician assistants); 42 CFR § 414.56 (nurse practitioners).

## WRONGFUL CONDUCT

    A. Family Dermatology billed Medicare for 88305-26 biopsy slide interpretation claims in violation of the Stark statute because those biopsy specimens were referred to Family Dermatology by Dr. Paula Nelson even though Dr. Nelson has an investment interest and a compensation interest in Family Dermatology.

18.    Dr. Paula Nelson is making referrals for professional slide interpretations of biopsy specimens under procedure code 88305 to her own lab because she directed Family Dermatology staff to refer biopsy slides to Nelson Dermatopathology. 42 CFR § 411.353(a) provides that "a referral made by a physician's group practice, its members or its staff may be imputed to the physician if the physician directs the group practice, its members or its staff to make the referral or if the physician controls referrals made by his or her group practice, its members or its staff." In this case, Dr. Nelson controlled the referrals of biopsy specimens by directing Family Dermatology staff to refer such specimens to Nelson Dermatopathology. Dr. Nelson therefore violated 42 CFR § 411.350(a) by making referrals for designated health services (here pathology services) to her own lab which she owned.

19.    The "physician services" exception to the Stark self-referral prohibition in 42 CFR § 411.355(a) and the in-office ancillary services exception in 42 CFR § 411.355(b) do not apply here because both of these exceptions depend on the existence of a valid "group practice" as that term is defined in 42 CFR § 411.352. However, Section 411.352(a) provides that a group practice "must consist of a single legal entity." Moreover, "[a] group practice operating in more than one state will be considered to be a single legal entity notwithstanding that it is composed of

multiple legal entities, provided that (1) the states in which the group practice is operating are contiguous (although each state need not be contiguous to every other state); (2) the legal entities are absolutely identical as to ownership, governance, and operation; and (3) organization of the group practice into multiple entities is necessary to comply with jurisdictional licensing laws of the states in which the group practice operates."

20. In this case, these group practice definitional requirements are not met because (1) the states in which Family Dermatology operates are not contiguous; (2) the various Family Dermatology entities are not absolutely identical as to governance because their officers differ among the various entities; and (3) the Family Dermatology entities have multiple different tax ID numbers.

21. **Composite Exhibit 6** are bills sent by Family Dermatology to patients of Dr. Milstein for charges billed under procedure code 88305. These bills show that Family Dermatology was billing for biopsy slide interpretations performed by Nelson Dermatopathology.

22. As Andy Frankel stated in his August 12, 2010 email attached as **Exhibit 7,** "we [Family Dermatology] retain about 20-30% of the lab revenue ...." In that same email, Frankel quite explicitly described how biopsy specimens from independent contractor dermatologists like Dr. Milstein were being referred to Family Dermatology's lab, which as Frankel noted "is one of our main revenue centers."

23. Dr. Paula Nelson and her husband Adeyinka Adisokan used the Medicare funds obtained from the Family Dermatology self-referral scheme to pay the costs of purchasing dermatologist practices, which were bought based on multi-year buyout contracts with monthly payments that began only after the self-referral scheme began operating. The self-referral

scheme thereby enabled Family Dermatology to grow its operations while at the same time expanding the scheme.

      B. Family Dermatology billed Medicare improperly for the services of mid-level providers at 100 percent of the physician fee schedule rate for dates of service when the mid-level provider was not present in the same office as the supervising physician. Family Dermatology then chose to knowingly retain these overpayments.

    24. Dr. Milstein noticed that Family Dermatology billed Medicare at 100 percent of the physician fee schedule rate for services provided by mid-level practitioners in offices at which Dr. Milstein was not present on those dates of service. Examples of this include the services outlined in **Composite Exhibit 8** provided by Physician Assistant Sarah Humbarger (PA-C) on June 18, 2009; July 2, 2009; July 9, 2009; June 23, 2011; and August 11, 2011.

    25. Dr. Milstein repeatedly objected to Family Dermatology's practice of fraudulently billing Medicare at 100 percent of the physician fee schedule rate for services provided by mid-level practitioners like PA Sarah Humbarger which were not incident to his direct supervision or the direct supervision of other dermatologists. **Exhibit 9**. As **Exhibit 9** shows, Andy Frankel knew as of September 2009 that "most of her [Sarah Humbarger's] claims before August of 2009 were billed under [Dr. Milstein] as a covering physician." Yet Family Dermatology chose not to repay Medicare the overpayment due and chose to continue this fraudulent billing practice for years after Dr. Milstein brought this to the attention of Andy Frankel. **Exhibit 10**. Based on Family Dermatology's lack of response to his objections, this fraudulent billing practice may have occurred or be occurring at other Family Dermatology offices as well.

    26. Examples of office visit claims billed to Medicare at the 100 percent level for services provided by PA Sarah Humbarger include the highlighted entries on **Exhibit 11**.

## COUNT I

### PRESENTING FALSE AND FRAUDULENT CLAIMS
### IN VIOLATION OF 31 U.S.C. § 3729(A)(1)

27. Relator realleges and incorporates by reference paragraphs 1 through 26.

28. From at least 2006 to the present, and continuing on an ongoing basis, Defendants knowingly presented, and caused to be presented, false and fraudulent claims for payment or approval to the Medicare program by knowingly billing Medicare for biopsy slide interpretation claims which Defendants knew violated the Stark statute and which Defendants therefore knew were non-reimbursable.

29. From at least 2009 to the present, and continuing on an ongoing basis, Defendants knowingly presented, and caused to be presented, false and fraudulent claims for payment or approval to the Medicare program by knowingly billing Medicare for the services of mid-level providers at 100 percent of the physician fee schedule rate for dates of service when the mid-level provider was not present in the same office as the supervising physician.

## COUNT II

### CONCEALING AND AVOIDING OBLIGATIONS TO PAY OR TRANSMIT MONEY
### TO THE MEDICARE PROGRAM IN VIOLATION OF 31 U.S.C. § 3729(a)(1)(G)

30. Relator realleges and incorporates by reference paragraphs 1 through 26.

31. From at least 2006 to the present, and continuing on an ongoing basis, Defendants knowingly concealed and knowingly and improperly avoided obligations to pay overpayments back to the Medicare program.

## COUNT III

### CONSPIRACY TO PRESENT FALSE AND FRAUDULENT CLAIMS AND TO CONCEAL AND AVOID OBLIGATIONS TO PAY OR TRANSMIT MONEY TO THE MEDICARE PROGRAM IN VIOLATION OF 31 U.S.C. § 3729(a)(1)(C)

32. Relator realleges and incorporates by reference paragraphs 1 through 26.

33. From at least 2006 to the present, and continuing on an ongoing basis, Defendants conspired to present false and fraudulent claims to the Medicare program and to conceal and avoid obligations to pay overpayments back to the Medicare program.

### PRAYER FOR RELIEF

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants and order:

(a) That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false and fraudulent claims alleged within this Complaint, as the False Claims Act, 31 U.S.C. §3729, provides;

(b) That civil penalties of $11,000 be imposed for each and every false and fraudulent claim that Defendants presented to the United States;

(c) That pre and post-judgment interest be awarded, along with reasonable attorneys' fees, costs and expenses which Relators necessarily incurred in bringing and pressing this case;

(d) That the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act violations for which redress is sought in this Complaint;

(e) That the Relators be awarded the maximum amount allowed pursuant to the False Claims Act; and

(f)     That the Court award such other and further relief as it deems proper.

## Demand for Jury Trial

Relator, on behalf of himself and the United States, demand a jury trial on all claims alleged herein.

Respectfully submitted,

_/s/ K. J. Darken_
Barry A. Cohen
Florida Bar No. 096478
bcohen@tampalawfirm.com
Kevin J. Darken
Florida Bar No. 0090956
kdarken@tampalawfirm.com
THE COHEN LAW GROUP
201 East Kennedy Boulevard, Ste 1000
Tampa, Florida 33602
Telephone: (813) 225-1655
Facsimile: (813) 225-1921
Counsel for *Qui Tam* Relator

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing *Relator's False Claims Act Complaint* has been furnished by hand delivery to: **Robert O'Neill**, United States Attorney, United States Attorney's Office, 400 N. Tampa Street, Ste 3200, Tampa, FL 33602; and by Federal Express to **Eric Holder**, United States Attorney General, Dept. of Justice, 950 Pennsylvania Ave., N.W., Washington, D.C. 20530-001 on this 26th day of July 2012.

_/s/ Kevin J. Darken_
Kevin J. Darken